UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUKHTIAR SINGH,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>　　　　Respondents. | Case No.  1:26-cv-0611-DAD-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

　　Petitioner Mukhtiar Singh, an asylum applicant who has lived in the United States for the past two-and-a-half years, was arrested and re-detained by ICE.  He petitions for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a hearing violates the Fifth Amendment and seeking immediate release.  For the reasons outlined below, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

　　Petitioner, a citizen of India, entered the United States in 2023.  ECF No. 1 ¶¶ 53-54. Federal agents detained petitioner, and DHS released him with a Notice to Appear.  *Id.* ¶¶ 55-59. On June 24, 2025, an immigration judge dismissed petitioner's asylum case without prejudice. *Id.* ¶ 65.  As soon as the immigration judge dismissed petitioner's case, ICE detained him outside the courthouse.  *Id.* ¶ 4.  Petitioner timely appealed the dismissal of his case, and his appeal remains pending with the Board of Immigration Appeals.  *Id.* ¶ 66.

1  Petitioner has no criminal history and has "complied with all requirements to apply for
2  asylum protection, to appear at immigration appointments when requested and to comply with the
3  laws of the United States following his unlawful entry to the U.S." *Id.* ¶ 67.  He has lived in the
4  United States for over two years.  *Id.* ¶ 54.

**Legal Standard**

6  A federal court may grant habeas relief when a petitioner shows that his custody violates
7  federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75
8  (2000).  "The essence of habeas corpus is an attack by a person in custody upon the legality of
9  that custody, and . . . the traditional function of the writ is to secure release from illegal custody."
10 *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a
11 petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.
12 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of
13 reviewing the legality of Executive detention, and it is in that context that its protections have
14 been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction
15 includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

17 Petitioner argues that respondents violated his Fifth Amendment Due Process rights by re-
18 detaining him without notice and a hearing.[1]  ECF No. 1 at 16-17.  Notably, the government has
19 offered no response to petitioner's due process claim.  Instead, respondents advance an argument
20 premised on an assertion that petitioner is an "applicant for admission" within the meaning of 8
21 U.S.C. § 1225(a) and that he was re-detained under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 7 at 1-2.
22 For support, the government relies on *Buenrostro-Mendez v. Bondi*, — F.4th —, No. 25-20496,
23 2026 WL 323330 (5th Cir. Feb. 6, 2026) and *Cortes Alonzo v. Noem*, 1:25-cv-1519-WBS-SCR
24 (E.D. Cal. Nov. 17, 2025).[2]  The government does not explain what, if any, alternative grounds

---

[1] Petitioner also advances other arguments, but because I am recommending that the petition be granted on the grounds of due process alone, I find it unnecessary to reach petitioner's remaining arguments.

[2] Respondents rely on the Fifth Circuit Court of Appeals' divided panel's opinion in *Buenrostro-Mendez v. Bondi*, — F.4th —, 2026 WL 323330 (5th Cir. 2026) for their argument that § 1225(b)(2) applies to individuals like petitioner who were never admitted to the United

support its statutory position. More fundamentally, the government fails to address how its statutory argument responds to petitioner's constitution-based argument.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked

---

States and have been arrested in the interior of this country. Respondents seemingly ignore, however, the Seventh Circuit Court of Appeals' disagreement with the *Buenrostro-Mendez* majority's stance, *see Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025), and the multitude of district court decisions in the Ninth Circuit expressly rejecting the government's argument, *see Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 937 (N.D. Cal. 2025); *Maldonado Vazquez v. Feeley*, — F. Supp. 3d —, 2025 WL 2676082, at *12-16 (D. Nev. 2025); *Rosado v. Figueroa*, No. 25-cv-02157-PHX-DLR-CDB, 2025 WL 2337099, at *7–10 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted by*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).

This court need not follow *Buenrostro-Mendez*. First and foremost, this court is bound only by decisions from the United States Supreme Court and the Court of Appeals for the Ninth Circuit. Absent guidance from either, *Buenrostro-Mendez* is at most persuasive. More importantly, I have found that petitioner has advanced a successful due process challenge to his detention and recommend granting relief on that basis solely.

only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that non-citizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025); *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Valencia Zapata*, 2025 WL 2741654, *6; *Shoimov v. Chestnut*, No. 1:25-cv-1603 CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in 2023. ECF No. 1 ¶ 56. He has lived in the United States, subject to ICE supervision but outside of custody, for over two years. During that time, petitioner has formed "enduring attachments of normal life" while living in the United States. *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released non-citizens to have strong liberty interests).

Once a court has found that a non-citizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the non-

1  citizen before depriving him of that liberty interest.  This requires balancing the factors laid out in
2  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993
3  (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

4      The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

9  *Mathews*, 424 U.S. at 335.

10      Here, petitioner has a significant private interest in his continued release.  "Freedom from
11  imprisonment—from government custody, detention, or other forms of physical restraint—lies at
12  the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678,
13  690 (2001).  Petitioner had been released in the United States under the supervision of ICE for
14  over two years prior to his re-detention.  During that time, he applied for asylum and worked to
15  support his family.  ECF No. 1 ¶ 71; *see Salazar v. Casey*, No. 25-cv-2784-JLS (VET), 2025 WL
16  3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("Petitioner has an interest in remaining with her family,
17  seeking counseling, and attending hearings to seek a visa."); *Noori v. LaRose*, No. 25-cv-1824-
18  GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest
19  in remaining free, which developed over the year he resided in the United States.").

20      Turning to the second *Mathews* factor, the risk of erroneous deprivation is high.
21  Petitioner was released on his own recognizance after his initial detention at the border.  Prior to
22  releasing petitioner, immigration officers necessarily determined that he was neither a flight risk
23  nor a danger to the community.  *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a
24  petitioner's "release from ICE custody after her initial apprehension reflected a determination by
25  the government that she was neither a flight risk nor a danger to the community").  And in the
26  intervening years, there has been no indication that he has become a flight risk or a danger to the
27  community.  *See Salazar*, 2025 WL 3063629, at *4 (noting that there was no evidence that the
28  petitioner presented a danger to the community or a flight risk).  Absent a pre-detention hearing in

front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G.*, 2025 WL 3254999, at *7 ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

Respondents neither argue that petitioner is now a danger to public safety or a flight risk nor do they show that a hearing has been afforded petitioner since his detainment on June 24, 2025. *See* ECF No. 7. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See id.*

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide additional procedural safeguards.

A consideration of the *Mathews* factors demonstrates that petitioner is entitled to notice and an opportunity to be heard before re-detention. Accordingly, petitioner has demonstrated that respondents violated his Fifth Amendment Due Process rights.

**Conclusion**

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be granted and that petitioner be immediately released from respondents' custody. The government has detained petitioner since June 2025. During this lengthy period of detention, the government has not only deprived petitioner of a statutorily mandated bond hearing but has also violated his due process rights. Release is warranted.

If respondents seek to re-detain petitioner, they should be required first to provide him with written notice and a hearing before a neutral adjudicator. At any such hearing, the government should be required to bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and petitioner should be allowed to have his counsel present.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner from their custody under conditions no stricter than those to which he was subject to prior to his June 24, 2025 detention.

3. Respondents be enjoined and restrained from re-arresting or re-detaining petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

1  IT IS SO ORDERED.

3  Dated: ___March 5, 2026___         _____
                                      JEREMY D. PETERSON
4                                     UNITED STATES MAGISTRATE JUDGE